## Case No. 14,942.

UNITED STATES v. DELAWARE INS. CO.

[4 Wash. C. C. 418.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1823.

UNITED STATES—INSOLVENCY—PRIORITY OF PAYMENT—TRANSFER OF PERSONAL PROPERTY—POSSESSION—CONSIGNEE FOR VALUE.

1. If before the right of preference of the United States to be first paid out of the estate of the insolvent has accrued, by the act of insolvency being committed, the debtor has made a bona fide conveyance of property to a third person, or has mortgaged it, or it has been taken in execution, such property is not liable for the debt due to the United States. A respondentia bond, in form, does not pass the right of property in the goods; nor does a mere consignment or indorsement of the bill of lading. They are mere personal contracts. But it is otherwise, if these instruments are given or made for value, or are given to a creditor, as a security.

[Distinguished in Atlantic Ins. Co. v. Conard, Case No. 627. Cited in Greely v. Smith, Id. 5,750.]

2. Actual possession is not necessary to a transfer of personal property; nor is the want

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

of it even an indicium of fraud, where from circumstances it cannot be obtained. Possession of goods at sea, by the master, is the possession of whosoever is or may become the owner of them.

[Cited in Keene v. Wheatley, Case No. 7,644.]

3. It is no objection to the vesting of the right of property in the consignee for value, or whose debt it is to secure, that the goods are by agreement to be at the risk and for account of the consignor.

This is a action for money had and received, to recover the sum of $6,141, on the following case: On the 7th of May, 1822, H. D. Watkins and Michael Doran borrowed from the defendants, the sum of $10,000, at respondentia, upon the specie, goods, &c. laden or to be laden on board the ship Adriana, whereof Thomas Dixey was master, bound on a voyage from Philadelphia to Canton, and at and from Canton back to Philadelphia, at a premium of fourteen per cent. The bond is in the common form; but upon it is indorsed a memorandum, signed by H. D. Watkins and Michael Doran, reciting an agreement that the bills of lading for the specie, goods, &c. mentioned in the within obligation, shall be indorsed to the Delaware Insurance Company, as a collateral security for the loan mentioned in it; and further, that the property to be shipped on the homeward passage, (as a collateral security) being the proceeds of the said loan, shall be for the account and risk of the said H. D. Watkins and Michael Doran, but consigned by invoices and bills of lading, under cover, addressed to the president and directors of the Delaware Insurance Company. It is then expressly declared, that such indorsement, or consignment, shall not be held to exonerate the persons of the borrowers, nor compel the Delaware Insurance Company to accept the specie or merchandise which may arrive under such bills of lading, or consignment, in discharge of the debt; but it shall be lawful for the Delaware Insurance Company to secure and hold the said specie and merchandise for sixty days after their arrival at Philadelphia, and if the principal and premium shall not be paid within said sixty days, to dispose of the merchandise at public auction, and to charge the borrowers with the balance that may remain due after crediting the specie so received, and the proceeds of the sales of the merchandise; the freight, duties, and other proper charges, being first deducted.

On the same day that the respondentia bond was given, the borrowers, Watkins and Doran, executed a separate paper, signed by them, stating that the Delaware Insurance Company, having lent them $10,000 on respondentia, at a premium of fourteen per cent. for the voyage of the Adriana, from Philadelphia to Canton and back, "it is further agreed, that the bill of lading of the outward shipment to be made in specie, with the returns thereof, are to be assigned to the Delaware Insurance Company, and that the consignee, or supercargo, shall be directed to consign the said returns to the Delaware Insurance Company, as a collateral security for the bond (being paid) now given by us." The bill of lading for the outward cargo shipped by Watkins, viz. two kegs, containing 10,000 Spanish dollars, to be delivered at Canton, to B. Etting or his assigns, is indorsed and signed by Watkins in the following words: "For value received, the receipt whereof is hereby acknowledged, I do hereby assign and transfer the within bill of lading, and sum of money therein mentioned, and also the goods, &c. to be invested therewith at Canton, or elsewhere, and shipped in return for the same, unto the Delaware Insurance Company, as a collateral security, according to the memorandum duly executed and indorsed on a respondentia bond given to the said Delaware Insurance Company." This indorsement is dated the 23d of May, 1822, which is also the date of the bill of lading. The bill of lading at Canton, is dated the 23d of December, 1822, and the goods mentioned in it are stated to be shipped by B. Etting, for account and risk of H. D. Watkins, and consigned to the Delaware Insurance Company, and to be delivered to them. The invoice corresponds with the bill of lading, and is addressed to the president of the Delaware Insurance Company.

The Adriana returned to this port on the 24th of April, 1823, and on the 26th of June following, the defendants stated an account with H. D. Watkins, making a small balance against him, after debiting the sum loaned, premium, interest and charges, and crediting the goods, &c. On the 9th of June, 1823, Watkins executed a deed of assignment to the district attorney of all his property, in trust to pay certain duty bonds (the amount now sued for) due to the United States, and the residue for the use of his other creditors. The schedule which accompanied this deed mentions Canton goods by the Adriana, in the hands of the Delaware Insurance Company, by virtue of a consignment to them. These goods, being, on their arrival, taken into the stores of the custom house, the district attorney addressed a letter to the collector, stating the above assignment by Watkins to him, and desiring him not to deliver the goods to the defendants. By a subsequent arrangement between the parties, the goods were delivered to the defendants without prejudice, under an agreement that this action should be brought to try the question of property in them. On the side of the United States it was contended, that on the 9th of June, 1823, when the legal insolvency of Watkins happened, by his assignment of all his effects to the use of the United States, the property in the Canton goods was in him, and not in the defendants. Neither the respondentia bond, the assignment of the outward bill of lading, nor the consignment by bill of lading and invoice of the homeward cargo to the defendants, amounted, per se, to a transfer of the property in these goods

to them. They were shipped for the account, and at the risk of Watkins, which, together with the possession of them by his agent, constituted him the unquestionable owner of them. The defendants never had either actual or constructive possession of them, which is essential to the transfer of personal property. If the defendants were not the owners, neither had they a lease, because they had not possession. In short, the sole object of the agreement between Watkins and the defendants, was to give a preference to the latter, which must yield to that claimed by the United States. [U. S. v. Hove] 3 Cranch [7 U. S.] 73, 90; [Prince v. Bartlett] 8 Cranch [12 U. S.] 431; U. S. v. King [Case No. 15,536]; 3 Johns. 369; [U. S. v. Fisher] 2 Cranch [6 U. S.] 358; 1 Serg. & R. 326; Holt, Shipp. 420; Abb. Shipp. (Story's Ed.) 167; 2 Bl. Comm. 458; 4 East, 319, 324; 8 Term R. 330; 2 Holt, N. P. 72; 18 Vin. Abr. 67; 12 Mod. 136; 1 Johns. 215; 1 Camp. 369; 17 Mass. 110; 3 Term R. 119; Paley, Prin. & Ag. 117; [The Francis] 8 Cranch [12 U. S.] 418; [Moreau v. United States Ins. Co.] 1 Wheat. [14 U. S.] 231.

On the other side, it was insisted, that the preference claimed by the United States, is not in the nature of a lien to overreach an absolute transfer of property by the insolvent, or a security given on it; and this whether the property be real or personal. Although a respondentia bond, assignment of a bill of lading, or a consignment of goods, does not per se transfer the property; yet if it appear that it was the intention of the parties, by these means, to grant a security to the indorsee or consignee for a debt due, or if the indorsement or consignment be for a valuable consideration, the right of property passes. Actual possession is not essential to the transfer where it cannot be taken, which is always the case where the goods are at sea, or beyond sea. To avoid a charge of fraud, it should be taken as soon as it can be obtained. Neither is the transfer prevented by the circumstance that the goods are shipped for account and at the risk of the shipper, if it be part of the original agreement that they should be so shipped, as it was in this case, and if the intention of the parties manifestly appears to have been that the consignment should be made for the purpose of securing a debt. [U. S. v. Hove] 3 Cranch [7 U. S.] 73, 90; [Thelusson v. Smith] 2 Wheat. [15 U. S.] 426; 2 Holt, N. P. 74; 6 East, 20; 1 Bos. & P. 563; 2 Term R. 485.

C. J. Ingersoll, Dist. Atty., and J. R. Ingersoll, for the United States.

Mr. Binney and John Sergeant, for defendants.

WASHINGTON, Circuit Justice (charging jury). The question is, whether the preference to which the United States are entitled over the other creditors of Watkins, will overreach the right claimed by the defendants to the goods imported from Canton and consigned to them?

The leading principle stated in the case of Thelusson v. Smith, 2 Wheat. [15 U. S.] 426, is that which must in a great measure decide this cause. It is, that although in a case of insolvency, the debts due to the United States are first to be satisfied, without regarding the superior dignity of those due by the insolvent to others, still they must be satisfied out of the debtor's estate. And therefore, if before the right of preference has accrued to the United States, the debtor has made a bona fide conveyance of property to a third person, or has mortgaged it to secure a debt, or if his property has been seized under an execution; in all these cases, the property is divested out of the debtor, and cannot be made liable to the debts due to the United States. It has also been decided by the supreme court, that the right of preference given to the United States does not arise until the act of insolvency has been committed, and that this right is not in the nature of a lien. [U. S. v. Fisher] 2 Cranch [6 U. S.] 358.

Attending to these principles, we have now to inquire whether, upon general principles of law, the property in the Canton goods consigned to the defendants, was divested out of Watkins, and vested in the defendants, prior to the 9th of June, 1823, when the act of insolvency was committed? It must be conceded that in England, as well as in this country, a respondentia bond in common form, is considered as amounting to no more than a personal security. It is equally clear, that a mere consignment or indorsement of a bill of lading, or filling up a bill of lading to the consignee, does not per se pass the right of property in the goods to the consignee or indorsee. They only give to the consignee a right to demand the goods of the captain.

The true rule is stated by Holt (page 74) in his second volume on Shipping, that the indorsement of a bill of lading is an immediate transfer of the legal interest in the cargo to the assignee, provided it be for value. But if shipped without order, the ownership remains in the shipper; or if the indorsement be made without consideration. But it is otherwise, if the bill of lading be filled up to a creditor as a security for his debt. It is laid down in the case of Hibbert v. Carter, 1 Term R. 745, that an indorsement of a bill of lading to a creditor, without any proof or explanation, dehors, is, prima facie, a transfer of the property to him; but if the intention be proved to be only to bind the net profits, it is otherwise. Now this is a very strong case in its application to the present. For, if the mere circumstance of the indorsee being a creditor, amounts to a presumptive transfer of the property, how much stronger must be the case where the object and intention of the indorsement are to secure a debt due to the indorsee, and in fulfilment of an express agreement between the shipper and the indorsee, entered into at the time the debt was contracted, that the indorsement should

be made, or the bills of lading be filled up to the creditor, for the purpose of securing the debt then contracted? This is precisely the present case. The $10,000, for which the respondentia bond was given, were loaned upon an express stipulation in writing, entered into at the time of the loan, that the bills of lading for the outward cargo should be indorsed to the defendants, as a collateral security for the debt, and also that the goods to be shipped on the homeward voyage, being the investment of the money lent, should be assigned to the defendants, and should be consigned to them as collateral security. This agreement was partly executed on the 23d of May, 1822, by the assignment of the outward bill of lading, and of the $10,000 mentioned in it, and of the goods in which they were to be invested, and was afterwards completed by the consignment to the defendants.

Two objections have been made by the plaintiffs' counsel to the application of the principles before mentioned to the present case. (1) That the transfer was incomplete and inoperative, on account of actual possession of the goods brought from Canton having, at no period, been taken by the defendants. (2) That these goods were shipped and were agreed to be so shipped, at the risk and for account of Watkins.

As to the first objection, it is not well founded in point of law. Actual possession is not essential to the transfer of personal property, and the want of it is not even an indicium of fraud, where, from circumstances, it cannot be obtained. The indorsement of a bill of lading for a cargo whilst at sea, for a valuable consideration, transfers the property, although actual possession is not and can not be taken by the assignee. The possession of the master is constructively the possession of the owner of the goods, and the right of possession follows the right of property, according as that may change from one person to another. A contrary doctrine would be attended by the most calamitous consequences to commerce.

The other objection is completely and satisfactorily refuted by the case of Haille v. Smith, 1 Bos. & P. 563, in which it is laid down, that the nature of the trust being, that the proceeds of the cargo should remain with the consignee, applicable to the debt for the security of which the consignment was made, under an agreement to that effect, for a valuable consideration, the risk must necessarily remain with the consignor, notwithstanding the change of property, and that he must suffer, or be benefited by the loss or profit on the sale. The court came to the conclusion, that the cargo vested in the consignees, notwithstanding the risk remained in those who transferred the cargo, and notwithstanding the cargo was to be sold with a view to the profit or loss of the consignor. In that case, actual possession never came to the hands of the consignee; and it is, upon the whole, a strong authority as to most, if not all, the points discussed in this case.

We are clearly of opinion, that the property in these goods vested in the defendants prior to the act of insolvency committed by Watkins on the 9th of June, 1823, and that they were not liable to the preference claimed by the United States. The only interest which remained in Watkins, was a right of redemption upon payment of the debt due to the defendants, or to any surplus which there might have been upon a sale of the goods, after satisfying the defendants. This being the law of the case, and the facts being all in writing, and agreed between the parties, I must direct a verdict to be found for the defendants.

Verdict for defendants.